We'll hear argument this afternoon in Case 09-400, Staub v. Proctor Hospital. Mr. Schnapper. Thank you. Mr. Chief Justice, and may it please the Court, the dismissal of an employee is often the result of the interrelated actions and decisions of several officials. Whether an employer is legally responsible for any particular official and his or her actions and decisions turns on agency law. Congress legislates against the background of agency law and is presumed to have intended agency principles to govern that kind of question. Agency law, not the Eleventh Circuit's cat's paw doctrine, is the controlling standard here. There are two principal agency doctrines on which liability can be based. Well, before we jump to agency law, shouldn't we take a look at the language of the statute? Yes, Your Honor. And the statute says that a prima facie case is made out if it is shown that military service, anti-military animus, was a motivating factor in the employer's action. The employer's action here was discharge, right? That's correct. And the word motivate means to provide someone with a motive to do something, right? Yes, sir. And the person who did something here was the person who discharged Mr. Staub, right? So why doesn't it follow that the motivation that's relevant under the statute is the motivation of the person who performs the action that is challenged? Well, there are a series of actions and decisions that yield this result. The reference in the statute is to the actions of the employer, not to any particular official. And so the employer's actions are not the actions of the employer. No, but what is made illegal are certain employer actions, right? Not everything that's done. Not just writing up a bad report for biased reason is not actionable under this statute. Isn't that correct? That's correct. But a decision to dismiss an official can be, and is here, the result, the cumulative result of a series of decisions. It's not unlike what occurs in the criminal justice system. Only a sentencing judge can send a defendant to prison, but that decision actually is a result of a series of other decisions, all of which are government action. But you say that those decisions that contribute have to be decisions by supervisory personnel. If your theory is correct, I don't know why that is so. I don't know why a co-employee who has a hostile motivation and makes a report to the supervisor who ultimately dismisses the individual, why that wouldn't qualify as well. Well, our standard is not whether it's a supervisor, but whether it's an official for whom the employer is liable under agency law. That would not be every supervisor. If a supervisor unrelated to this particular department put a false charge in a suggestion box, that wouldn't be any different. Ordinarily, a co-worker wouldn't qualify under agency principles as an agent of the conduct. You have to look at the specific conduct and apply the traditional agency standards. They are laid out, for example, in the Court's decision in Eller, which refers to the two branches of agency law, scope of employment and action which is aided in, where the actor was aided in the conduct by his or her official position. And I think those principles would not ordinarily apply to a co-worker, but they would also not apply invariably to a supervisor. This isn't we're not advocating the supervisor versus non-supervisor distinction in Eller, but a return to just the traditional agency doctrine. And we think those doctrines delineate who is the employer for the purpose of the statute which bans action by the employer. Scalia. The employer would be liable for these lower supervisory employees here. Why? Did they have authority to discharge? No. They had other authorities. They had — well, there are two doctrines. Why do they stand in different shoes from a co-employee who also contributes to the ultimate decision to fire? It's the core responsibility of — in terms of scope of employment. It's the core responsibility of a supervisor, of a particular individual, to be monitoring his or her behavior, reporting on it, perhaps initiating disciplinary measures. That wouldn't be true of all supervisors. It's only true of Mr. Staub's supervisors. So what — the kind of thing they did was the kind of work that they were employed to engage in. And that distinguishes them from, say, another supervisor who might slip a note into a suggestion box. Second, the other branch, major branch, of agency law is that an employer is liable for actions of individuals when their conduct — when they were aided in their conduct by their official position, which would not typically be true of a fellow worker. But that could be true here. For example, Mullally set much of this in motion when, on the plaintiff's version of the facts, she issued the January 27th corrective order. Everyone agrees she wrote it, she signed it. She was aided in doing that by her position as a supervisor. A co-worker couldn't do that. And indeed, somebody else's supervisor couldn't have done that.  Alitoso, could I just ask where — could I ask where your argument leads? Let's say that an employer calls in an employee and says, now, we have to decide who to lay off, and we've looked at your record over the last 10 years, and here it is, all of the evaluations you've gotten over the past 10 years. And based on all of that, we've decided that you're going to be the person to be laid off. Now, if it turns out that one of those evaluations was rendered by someone who had an anti-military bias, would that make the — would that be a prima facie case against the employer? It would. But the —  I'm saying that the validity of all the prior evaluations, still the employer would be on the hook. Yes. There's nothing in the statute, in the common law, that creates a special rule for thorough investigation. Well, that's a sweeping rule. I was going to ask a related hypothetical. Suppose that the officer who's in charge, charged with the decision to terminate or not to terminate, says, I'm going to have a hearing. You're going to both have counsel, and you have — who is it? It's a — suppose that — Buck — suppose that two employees that were allegedly anti-military here testified, and they said there was no anti-military bias. And the person is then terminated. Later, the employee has evidence that those two were lying. Could he bring an action then? Yes. Yes. That's sweeping. That's almost an insurer's liability insofar as the director of employment is concerned. It's Respondent's — Yes, he's sure that there is — he's done everything he can. He has a hearing. And it's almost absolute liability. Respondent's hearing is absolute liability. There's no due diligence exception. In fact, if you look to section 219 of the Restatement of Agency, 219 part 2b, it says that part 2b provides for liability based on negligence, but part 2d, in — regardless of whether there's negligence, provides liability if you're added in your — aided in your conduct by the — by your position. Now, it's possible, depending on the exact facts, that the situation you described wouldn't fit into scope of employment or aided in. If you just had two people whose only role was just as witnesses, then they're not acting as agents. They're just witnesses, perhaps. But there is no — There is a defense for the employer that no matter that there was this ill will, there was enough else to warrant termination of this employee. And so the — That's correct, Your Honor. And it's the language of section 4311c1 that's critical here. The statute provides that if an improper motive was a motivating factor, there is a defense, but there's only one defense. And the defense is a showing the employer would have fired the plaintiff anyway. The language is mandatory. It says if the defense is not made out, the employer shall be considered to have violated the statute. The clearest enunciation of the error in the Seventh Circuit is the language at page 47 of the Joint Appendix where the Court says, with all regard to the jury verdict here, the employer is off the hook if the decisionmaker did her own investigation. That's an additional defense, and it's simply inconsistent with the language of the statute. Now, that may not have been — that may have been harsh, but it's what the statute says. It isn't what the statute says. You jump over the language of the statute. It has to be a motivating factor in the decision to discharge. And that speaks — that looks natural. The natural reading of that is that it looks at the motivation of the person who actually makes the decision to discharge. Now, I'm not suggesting that's the right rule. That's a very unattractive rule. But the rule that you have suggested is also a very unattractive rule, one that I doubt the Congress intended to adopt. Is there no reasonable middle position here? It's all or nothing? Well, I think that the kind of circumstances that the Court's pointed to would be relevant at the remedy stage. The remedies are discretionary. And whereas 4311c1 says shall, 4323, in describing all the remedies, says may. And so a court could take those things into account in framing a remedy. And certainly the good faith efforts of someone in Buck's position, for example, would be relevant to a determination of whether a violation was willful. And that, in fact, reflects what happened in this case, which is that the jury found that there was a violation, found that the motivations involved here included an improper motivation, rejected the 4311c1 defense, but then found the violation wasn't willful. So I think given the structure of the statute, the play here, the ability to adjust to those circumstances is in the remedy provision, not in the mandatory language of 4311c1. Sotomayor, isn't that the government's formulation that the discrimination has to play a substantial role in the termination of a limiting principle? I mean, you answered or appeared to be answering, Justice Alito, that in a 10-year history, if one report of discrimination existed, that that would shift the burden to the employer. Is that an accurate statement of the law, that one report has to play a role that's more than a mere existence, doesn't it? Well, in that regard, I think we would articulate the standard differently. Than the ESG? Yes. The language in the statute is not a substantial motivating factor. It's a motivating factor. And that choice of language is clearly deliberate. This whole – this language in this provision derives from this Court's decision in Price Waterhouse, a very fractious decision. But it has to have some materiality to the decision. I mean, it has to have – it has to play not just any role. It has to play a material role in the decision. No? Or if they use substantial, it could be material, it could be useful. If I could go back to Price Waterhouse and explain how we got to this language. It was a sharply divided opinion. The plurality standard of Justice Brennan said a motivating factor. Justice White's standard was a substantially motivating factor. Justice O'Connor's standard was substantial. Justice Kennedy pointed out in his dissenting opinion that was going to lead to fights about how much was enough to be substantial. When Congress then wrote the 1991 Civil Rights Act, from which this language derives, amending Title VII, they used the Brennan language, a motivating factor. They didn't use substantial. And I think that was clearly deliberate. Everybody – anyone who read Price Waterhouse and that provision was written about Price Waterhouse would have understood that that was a difference within the Court. Scalia. Mr. Schnapper, I guess this goes back to Justice Alito's question. I find it difficult to grasp the distinction that you draw or to see that it could possibly exist between a willful motivating factor and a non-willful motivating factor. I mean, to say that it's motivating is to say that it's willful, it seems to me. But you want us to draw a distinction between a willful motivating factor and a non-willful motivating factor. That's not our position, Justice Scalia. Our position is that with regard to the liability determination in 4311, that a motivating factor is what's required. And if you have a number of different officials involved, Buck and Mulally and Korenchuk, if any of – if anyone who played a role in this had an unlawful motive, that satisfies 4311 and C-1, and the burden shifts to the employer to show it would have done the same thing anyway. Willfulness doesn't have that same language about a motivating factor. It just asks whether the employer's violation was willful. This Court's decision about willfulness in Thurston and Hayes and Paper, I think, are broad enough to encompass a situation where you had several different officials. And if I might add to that, Justice Scalia, I think that's what I'm trying to say. Scalia, but you want to hold the employer liable for the actions of these other officials, other than the one who did the firing. And if they're liable for the – if you hold the employer liable for their contribution to the filing, it seems to me you have to hold him liable for their willfulness as well. It's our view that the language of the statute permits that distinction because of the discretionary nature of the remedy provision as opposed to the mandatory nature of 4311 and C-1. I'd like to reserve the balance of my time. Roberts. Roberts. Thank you, Mr. Schnapper. Mr. Miller. Mr. Chief Justice, and may it please the Court, an employer is liable under USERRA when a supervisor acting with a discriminatory motive uses delegated authority to cause an adverse employment action. A court of appeals held that a liability does not attach unless that supervisor exerts singular influence over the decisionmaker. That standard is inconsistent with the statute for two reasons. First, it's incompatible with the statutory definition of employer, which includes not just the ultimate decisionmaker, but any person to whom the employer has delegated the performance of significant employment responsibilities. Second, it's contrary to the statute's causation standard, which requires only that military status be a motivating factor, not necessarily a singularly important factor or the determinative factor in the adverse employment action. Now, the rules of the statute prohibit the use of the term causation, but it's not the ultimate decisionmaker. There are two separate components to the inquiry. The first is that it has to be a motivating factor, and that's the plaintiff's burden to establish in order to make out a prima facie case under section 4311c. And then there is an affirmative defense if the employer can show that it was not a but-for factor in the sense that, you know, even had the person not been in the military, the same action would have been taken. That's the — if the employer can show that, then it's absolved of liability. Sotomayor, are you using proximate cause in but-for, or are you suggesting a different formulation of causation? In our view, the motivating factor language captures the idea of proximate cause. Something can be a motivating factor if it is one of many factors, but in our view it does need to be more than a trivial or de minimis factor. And if you have a situation where the bias, the action of the bias supervisor leads through a long and improbable and unforeseeable chain of causation to the adverse employment action, you might have but-for cause, but you wouldn't have proximate cause and it wouldn't be a motivating factor. Now, this case, and I think most real world cases, are quite different from that. Here we have a termination decision that was made by Box on the basis of the January 27th warning that was given to Petitioner and the report that Petitioner had not complied with that warning. And both parts of that, the warning issued by Mullally and the report of noncompliance that came from Korenchuk, both parts of that, the jury could have concluded, were identified. Sotomayor, in that formulation, as you've just articulated, where do you place your test of a subordinate setting in motion and playing a substantial role? What is that test that you proposed in your brief? How does it fit into this? The discriminatorily motivated actions in this case, on the evidence interpreted in light most favorable to Petitioner, were the decision of Mullally to write up Petitioner for this January 27th incident, and that was motivated by her hostility to him because of his status in the Army Reserves. And then the decision of Korenchuk to report that he had violated the terms of that January 27th warning, and that was also motivated by his hostility to Petitioner's membership in the Army Reserves. And both of those decisions had a substantial causal role in the ultimate decision made by the employer to terminate.  Sotomayor, your Petitioner's counsel argues that there is no issue of substantive in the motivating factor test. It doesn't have to be a substantial role. It just has to be a motivating factor, so that the subordinates. Well, I mean, this may just be a semantic disagreement. We don't think it has to be substantial in the sense of predominant. It can be one of the – there can be many factors, and as long as it's one of them, that's a motivating factor. But it needs to be substantial in the sense of more than de minimis or more than trivial, something that the employer actually took into account. What happens in a situation where a prior evaluation or some disciplinary action does have a substantial effect on the decision that's – the employment decision that's made, but the employer has no notice that the prior evaluation or disciplinary action was based on a biased ground or any reasonable way of finding out that it was based on a biased ground? What happens in that situation? There would still be liability, just as there is liability in the situation, which is quite common, where an employer gives a single official the authority to both observe an employee's behavior and make a decision to terminate. If that single official is biased and makes a decision on the basis of that bias, then the employer is going to be liable, even if the people who hired that official tried very hard to make sure that he wasn't biased. And that's consistent. How do you get around the statutory language that says that the motivating – it has to be a motivating factor in the action that is challenged? It has to be a motivating – the statute says a motivating factor in the employer's action. And the employer's action here is discharge. Yes. And the employer, you know, when it's – the employer is a corporation and it's – so you have to look at which individuals do you look at in figuring out whether it was a motivating factor or not. And the statute tells us that. In the definition of employer in section 4303, it says that the employer includes everyone who has been delegated the performance of employment-related responsibilities. Yes, but those other people, everybody who has been delegated authority under the – by the employer, are not – is not involved in the action that is challenged. They – they've Does not take the action that is challenged. They are not the last person who signs the piece of paper, but they certainly are part of the employer's decision. All right. So maybe then the test is whether they were delegated some of the responsibility for the challenged action. Were they delegated responsibility for making the discharge decision? They were delegated supervisory responsibility by the employer, the authority to observe the people under their supervision, to evaluate and report on their performance, the authority to initiate disciplinary proceedings. And they used that authority in a discriminatory manner. And that conduct by them was a substantial causal factor in the ultimate action of discharge. And given the statutory definition of employer and the motivating factor causation standard, that's enough under the statute for liability. What about a situation where a particular procedure such as the one here is set up for a discriminatory reason, and the employee is really upset with that, and so he, you know, starts a fire in the plant? Wouldn't have had — wouldn't have set the fire if not for the discriminatory purpose. Now, does he have a cause of action in that case when he's fired for setting the office on fire? No. Even though, as you say, in a sense there would be but-for causation. But it is not under any standard of proximate causation, and not a — the initial discriminatory discipline or warning would not be a motivating or substantial factor in the ultimate decision to fire him. He's being fired because of the intervening cause that, you know, this will be. Roberts, so you do accept that the traditional doctrine of an intervening cause is applicable in this case? Some independent intervening cause. Now, in this case, we don't have anything. Well, why independent intervening cause? Well, independent of the employer. I mean, in this case, we have a number of people, all of whom are agents of the same employer. So under traditional principles of an intervening cause, one can't say that any one of those agents of the employer was an intervening cause that broke the chain of causation from the misconduct of the other agent of the employer. You have a series of agents of the same employer engaging in a course of conduct that, at the beginning of which, is an unlawfully — unlawful discriminatory motive that leads to the termination. That's quite different from the employee deciding to start a fire or engage in some sort of misconduct that has nothing to do with his military status. Well, but I'm sorry, but I think the ender just kind of glided over the whole issue. You said it had nothing to do with his military status. It has to do with a procedure that was set up because the employer was discriminating against him because of his military status. So it certainly had something to do with his military status. It is not, I think, a — one would hope it is not a foreseeable result of discipline given to an employee that he would then start a fire. Well, I know, but the hypothetical is extreme to try to flesh out your position. You can certainly imagine an employee reacting in a particular way by being put through a series of procedures that were set up in a discriminatory manner that would seem to anybody to be a basis for termination, even though the groundwork was laid by the discriminatory procedure. I think one would not normally think that, even if it's less extreme than starting a fire, that a course of misconduct by the employee is a foreseeable result of a discriminatory motive. Wouldn't the employer's defense simply be, anyone who starts a fire goes? That's a — it would have happened no matter what the reason was for doing it. Yes. So that just comes under the employer's defense of showing that the same action would have been taken. Yes. Thank you, counsel. Mr. Davis. Mr. Chief Justice, and may it please the Court, the parties to this case are in total agreement with respect to two points. The first point is that Linda Buck made the decision to fire Vincent Staub. And the second point is there is no evidence whatsoever that Linda Buck possessed animus toward Mr. Staub on account of his service in the Reserve. Applying ordinary tort-related vicarious liability rules, Staub's case against Proctor Hospital would end right here. But the Seventh Circuit, applying what it calls the cat's paw doctrine, gives Staub and all other plaintiffs like him a second bite at the apple. Let's look at the hypothetical. Take it out of the facts of this case. There are two supervisors. Each of them have anti-military animus. And they both report that this gentleman was late when he wasn't. Right. It's absolutely a falsehood. They go in. They report it to Ms. Buck. Ms. Buck does an investigation. There are no witnesses. There is no one else to prove that they came in late. She just takes the supervisor's word. She looks at their report. It was moments after the employee didn't show up. And she says, he's a late-goer. I don't know anything about anti-animus. I simply fired them because two supervisors who are trustworthy. I've looked at their files. They've never lied about anything before. They're pretty honest people. And what happens in that situation? I think in that situation, consistent with the cat's paw analysis, with the facts that you set up, the two supervisors so dominated her decision that there'd be likely a finding that the case goes to the jury. So she went and looked for witnesses, didn't find them. She looked at their records. She did what happened here. Other people have complained about these people, don't particularly like them. But there being no other input whatsoever beyond that, there still is the domination issue. If I change your hypothetical just a little bit and say that all of what you said is true, but in addition to that, the fellow who got fired has a 10-year history of being late, and she looked at that history, I think that she's now made an independent decision, which is what happened in this case, and therefore under the Seventh Circuit's rule, no liability attaches, and that's not right at all. Sotomayor, because you just added a very important fact, which is a 10-year history of being late, but on this day, he wasn't late. On this day, the two supervisors made it up. And would she have fired him absent that report? Isn't that what the jury has to decide? I think that is what the jury has to decide, but I'm not sure that case in the latter extended hypothetical gets that far. Sotomayor, what this Circuit's Catpaw theory does and what others do say, if she engaged in any investigation, there's no liability. I disagree with that a little bit. I don't think if she engaged in any investigation, it absolves of liability. I think if she engages in a good faith investigation, it absolves of liability. What was it here? Because when the – what was his name? Querenshaw. Right. Takes him into Buck's office and Buck hands him the pink slip and says, you're fired, that the jury could have credited that evidence. He was given no opportunity to explain the situation. What kind of investigation? What – she looked at his personnel file. What else was the investigation? I will answer that before I get to that. I disagree with the point about he wasn't given an opportunity to explain. I think the record is clear. He was given an opportunity to explain. When? At the two times. At the time he was discharged, on the day that Querenshaw brings him in, Querenshaw says, I was looking for you and couldn't find you, and in the record, in fact, Staub gave an explanation of his whereabouts. Buck was there, she heard it. The second time is, approximately 5 days later, he files a 5-page-long grievance stating all of the – This is after he got his pink slip. What point when Querenshaw takes him into – takes Staub into Buck's office? According to his testimony, which the jury could credit, he wasn't asked a thing. She just said, here's your pink slip, you're fired. I think the record shows he didn't give an explanation of his whereabouts. The record also shows that he filed a 5-page grievance contesting that action.  After he was fired. And that Buck carefully investigated that, and 5 days after it was filed, gave him a letter saying, I've looked into it, I've considered all of your arguments, including your argument, that you were discharged on account of your military service, but I don't credit it. And therefore, I'm sustaining the discharge. And that is absolutely – Mr. Staub knew that that works for him, because in 1998, he invoked the same procedure when he was discharged the first time for similar reasons, and he was conditionally reinstated to employment at Proctor Hospital. Did I understand you to say that you do agree with the Seventh Circuit's cat's paw approach to this? I do agree with it. The cat's paw approach essentially gives Mr. Staub and others like him a second bite at the apple. But he has to demonstrate that the person who possessed Animus exercised so much control over the decision-maker that that person became the true decision-maker. And that simply doesn't work in this case for a number of reasons. Well, before you – how is that consistent with the statutory language that requires that this discrimination simply be a motivating factor? The answer to that is the statute sets forth five factors, four or five factors, and says that one of the four or five employment actions has to be a motivating factor in arriving at the decision. Can we turn – let's look at the statutory language. Okay. It's 4311A, and it says – And where are you reading it from? From the third line – well, I'm sorry, I can't tell you what line it is in. Page 3 of the blue brief. It says that there are five actions that are prohibited, denial of initial employment, re-employment, retention in employment, promotion, or any benefit of employment. And it says that an employer cannot take action, one of those actions, on the basis of four factors – membership, application for membership, performance, service, or service of obligation in the uniformed services. So there has to be something to connect one of those factors to one of those five actions, and that's the literal meaning of the statute. And I think the Seventh Circuit's view is absolutely consistent with that. Well, I'm sorry, I – the statute says is a motivating – one of those four things, membership, application, et cetera, is a motivating factor in the action. Correct. And I understood your position to be that the supervisor has to have such dominant control that it's the cat's paw. That the subordinate's motivation is imputed actually to the decision-maker and ultimately to the employer. Well, I guess where I'm having trouble following you is the total domination and motivating factor. It seems like a much more stringent test that the Seventh Circuit has adopted. Well, I think in the context of this case, Your Honor, it's not, because the definition of employer here not only includes Proctor Hospital, what you might call the ultimate employer, but it also includes the person who made the adverse employment decision. And in this case, it's Linda Buck. And this statute creates personal liability for Ms. Buck or anybody else who makes a decision if it's based on one of these factors contained in the statute. I don't think there's any way a jury would be allowed to consider whether or not Ms. Buck made a decision based on the statute because there's an absolute dearth of evidence that any of these factors motivated the decision she made. But that assumes that the employment decision is solely hers. It's hers not based on her piccadillos. It's hers based on information that she has gathered. I agree. It is hers to the extent that she makes a good faith investigation into the background facts. But she's not acting in a vacuum. She's acting on information that has been supplied to her by people who are authorized to supply that to her in the employment context. And in this case, she's acting on an awful lot of information. They've picked out- We're now talking past the individual case. I'm talking about just the legal analysis, which is she's a decision maker, but there are multiple actors on behalf of the employer. That's your adversary's position- I agree. Who are participating in the process. And they're saying, if any of those actors in the process has been delegated employment duties that permit them to participate in this way. Then if what motivates them is bias of this kind, then the employer's responsible. Not just for Ms. Buck's activities, but for the two supervisors' discriminatory activities. That would lead to a never ending chain of looking backwards all the time over the course of perhaps a very long employment history. To scour the record to determine is there one single or two single actions out there that may somehow have come forward and caused the termination. In most situations, an employer comes in and says, I fired X for X, Y, and Z reasons. And if they don't mention one of those inconsequential or immaterial reports, why would a court go rely on it at all? It's not a motivating factor. I'm not sure I thoroughly understand the hypothetical, but if the true decision maker there comes forward and says, I didn't know about this, I didn't rely upon it, I don't think that the animus can be imputed for the decision. Why is this so complicated? I'm probably missing something. I don't- But the thing, but it doesn't help you, I don't think, if it isn't complicated. Okay. That is the, because of Burlington, we're only talking about a certain number of employees who can make an employer responsible. Right. Right, so those are supervisory people, call them. Correct. Now, why don't we just stop there and just say we have a statute. The statute says that if a bad motive was a motivating, it had to be a motivating factor, discriminatory motivating factor in the dismissal, then, unless you can prove an affirmative defense, you lose. Why do we have to have something special if one of these small group of employees happens to be the person who said the last words or happens to be somebody who told somebody who said the last words or happens to be somebody who told somebody the something or other, you're just looking for one thing, and there can be 5 zillion fact situations. So why something special? Why did the Seventh Circuit say where it's not the guy who said the last words, you have to show, quote, singular influence? Why singular influence? Why not just what the statute says? I think that it was a, it led to the, what she said, led to the discriminatory motive being a motivating factor, period, end of the matter. No special cat's paw rule, no special anything rule. Breyer, No consideration of proximate cause either. Breyer, Oh, no. Of course you have to show proximate cause. You have to show cause. You always do. I'm just saying why have a special rule, why not have a special rule if somebody was on the second floor? You wouldn't think of that. So if you're not going to do it because the person's on the second floor, why do it because they happen to be somebody who told somebody rather than somebody who was the person who was told? Breyer, Because to motivate, to be motivated by one of these factors, there has to be some element of proximate causation. Breyer, Oh, fine. You're perfectly entitled to say that. But what I don't see that you're entitled to say are the words that the Seventh Circuit used, which is you have to show jury that there was sufficient evidence to support a finding of singular influence. Breyer, I think. Breyer, That doesn't just sound like it was a motivating cause. That sounds like it was something really special. I think that that is the Seventh Circuit's way of saying proximate cause. Breyer, Ah, okay. So why don't we say, Seventh Circuit, if that's your way of saying it is just a normal thing like cause, we accept that. But please don't use those words. And because you might have used the meaning something else, we will send this back so we're certain that what you're doing is applying the same test to everything. In other words, was it a motivating factor? I think you could say that. Breyer, All right. Well, then you're that seems like a good resolution to this case to me. I don't know if it does to them. Scalia, I think that you've misread the catch-all principle of the court of appeals. I don't think that it is to them a determination of proximate cause at all. As I understand their opinion, they say that the statute requires that the, let me get the right language here, that the discriminatory, prohibited discriminatory factor must have been a motivating factor in the employer's action. And they say that means it must have motivated the person who took the employer's action. It's not a motivating factor in the employer's action unless the person who took the action on behalf of the employer had that as its motive. Then the court of appeals makes an exception. However, if the person who appears to be taking the action on behalf of the employer is really not the person who took the action, but was totally under the control of a subordinate who, and the person just swallowed that subordinate's determination, then we will hold, even though the ultimate fire, the person who signed the pink slip, even though that person didn't have the motive, if in fact the decision was effectively the decision of a lower subordinate, we will hold the employer. It has nothing to do with proximate cause. It has to do with the text, that it has to be a motivating factor in the employer's action, not a motivating factor somewhere down the line, but in the employer's action. That's how I read the court of appeals opinion. And I agree with that, and we get back to the notion that in this case it was Ms. Buck who made the decision. She made the decision. But Ms. Buck never would have made this decision if Korenchuk hadn't come in and said, here's Staub, he's goofing off, he was told to tell me when he was going to be absent, and he didn't. Korenchuk, who has the analyst, is a motivating factor, certainly, in what happened to Mr. Staub, because if we didn't have Mr. Korenchuk marching Staub into Buck's office, he would have retained his job. Wasn't his last or his most recent performance rating very good? Only in one respect. He received a technical very good, but with respect to the narrative portion of that evaluation, it says, I want you to stay in the department when you're being paid to work and not to be out wandering around. In any case, there was no indication that, apart from Korenchuk's coming in, that Buck would have taken any adverse action against Staub. I don't think we know the answer to that. Well, that's not the point. It seems to me you have to — we're not going to second-guess the jury determination here. I understood your point to be that there's a difference between a motivating factor in the decision, which means the person who made the decision on behalf of the employer must have had that motive, and, on the other hand, a factor which was relevant to the decision or a factor which influenced the decision. That's quite different from a motivating factor in the decision. You have to get us to believe, and I'm not sure we will, that motivating factor in the decision refers to motive on the part of the person who made the decision. That's essentially your point, isn't it? Yes. Well, then you can't agree with me, because my question was, why would that be? You have two people, A and B, they are both supervisors. In the one case, B fires the employee because he's in the army. And he says it, ha, ha, that's why I'm doing it. In the second case, he fires the employee because he thought the employee was in one of Justice Sotomayor's hypotheticals or anyone else. He fires him for a perfectly good reason, but A has lied about it. And the reason A lied about it was because she wanted to tell him a lie, so B would fire the employee. And her reason is because he's in the army. Those two situations, the second seems to me one of 80 million situations, fact-related, that could arise. And I don't know why we want a special standard for such a situation. Why not just ask the overall question, was this action an action that was in which the bad motive was a motivating factor? Forget psychoanalysis of A. B is good enough, or vice versa. That was my question. And in B, the employer could not be liable. In B, the person who made the decision, the employer, was not motivated by one of the  If that person can't be liable, how can that employer of that person be vicariously liable? I don't think they can. Breyer. Because together they dismissed the employee. Oh, no. One by supplying the false statement, the other by acting on it. I disagree with that. A corporation can only act through its agents. They're both agents. That's why I made them both Burlington people. I wanted to get them in the group. They both have the same Burlington status. So we get that issue out of it. And together they fire this individual. In the absence of either the one or the other, he wouldn't have been fired. I've listened to the hypothetical long enough that I've lost track of who made the decision to fire him. I feel I'm going to get nowhere pursuing this hypothetical further, so I will drop it and say answer it as you wish or as you understand it. As I understand it, the second person in the hypothetical had no motivation whatsoever under the statute to cause the discharge, and therefore the employer wouldn't be liable for that decision. Well, your position is it coincides with the Seventh Circuit, but it is in opposition to the Secretary of Labor's commentary on how this works. Secretary of Labor's commentary is it's a motivating factor, and if Kornchek precipitates this whole thing, that's a motivating factor. Do we, I mean, this is the Secretary of Labor administers the statute. Do we give any weight to the government's official position on what a motivating factor means? Normally, you would give weight to the government's position, but I think the government's position has to be consistent with the precise language of the statute. How does the Secretary of Labor administer this statute? What are her responsibilities under this statute? There can be a charge filed with the Secretary of Labor, which the Secretary of Labor would then investigate. The Secretary of Labor has the option to bring an action should the Secretary choose to do so, but coterminously, the individual service person can bring an independent cause of action, and that's what happened in this case. In this case, there was no Secretary of Labor involvement. Well, why isn't this just governed by the standard principles of tort for concurrent actors? Actor A was not negligent. Actor B was. They both contributed to the accident. And we looked at the restatement of torts, which is whether or not the wrongful actor made a significant contribution. That's the end of it. I think that the problem with this situation is, is that one of the actors here, the decision that she made, being Mullally, and that's with respect to whom the most evidence of animus was adduced, didn't commit an action that would be actionable under USERA. There's no way that issuing the constructive advice record on January 27 violated the statute, even if it was motivated by animus. But we're talking about the test. And the test I gave you is quite different from the cat's paw test. And if you use the test something along the lines that I formulated, I don't know if that's precisely what the restatement statement says, but it's to that general effect. The instruction given to the jury was really overprotective of your client. Under the standard concurrent, concurrent causation analysis. The instruction may have been somewhat protective. The problem is, prior to issuing that instruction, the district court did no analysis whatsoever to determine if the instruction was warranted in the first place. And that was simply our point to the Seventh Circuit. Before you allow this to fall into the lap of the jury and try and explain to a jury, as opposed to the Supreme Court, what it means to be a cat's paw in the agency theory, the district court should at least make an initial determination that that's what we have here. Scalia. Can I turn to the Secretary of Labor's regulations? Are we talking about anything more than the following statement in his commentary accompanying the final regs, namely that an employee, quote, need not show that his or her protected activities or status was the sole cause of the employment action. The person's activities or status need be only one of the factors that a truthful employer would list if asked for the reasons for its decision. Is that the only? I believe that is the only thing with — there may be a section later on, Your Honor, in the regs that deals with it also. That's just the one that the government refers to. That's certainly the commentary that goes with it. That doesn't seem to me to be so damning of your case. I think if this employer had been asked the reasons for its decision, it would have given Ms. Buck's reasons. Ms. Buck would have said I let him go because he has this veritable tsunami of bad behaviors. What he's accused of is absolutely consistent with it, and I made the decision. Is it a truthful statement by her? It is absolutely a truthful statement by her. And that was the reason for her actions. I think Ms. Buck's consideration of the discharge decision wasn't limited to one source. It clearly was not. No one shaped or directed the scope of her determination. Even more important, she gave Mr. Staub the opportunity to tell his side of the story. And after considering all of that, she decided that his discharge was warranted.  Ginsburg's testimony before it, that at the time he received his pink slip, let's not talk about the grievance after. The time he got the grievance slip, he was not given any opportunity to explain that discharge was not warranted, that he had tried to reach Korenchuk on the phone to tell him we're going to lunch. And when he was unable to, he did not have an opportunity to say that to Ms. Buck. Again, Your Honor, I believe the record says, and I apologize, I can't quote it from the page, that in fact, Mr. Staub protested that what he was accused of, i.e., not being where he was supposed to be, was wrong, and he stated his version of it. If there are no other questions, Your Honor, I would respectfully request that the decision of the Seventh Circuit be affirmed. Thank you. Thank you, Mr. Davis. Mr. Schnapper, you have four minutes remaining. Mr. Schnapper, is that your recollection of this record, too, that he did state his grievance slip? I think it's somewhat unclear what happened. It's complicated by the fact that the defendant's account of why he was fired has changed. One, the written explanation was that he never obeyed the rule for the three months it was in effect. The explanation given by Buck was that she had been told that he wasn't, couldn't have been found on the 19th. The story that was given to Staub at the time was that Corenshaw couldn't find him on the 20th. So if he was responding to that, he was responding to the wrong criticism. Well, I don't think anybody thought that Buck would have fired him just for that one absence. That was the trigger, but it was the trigger that followed a long series of prior absences for which he had been disciplined before. I don't see any inconsistency between those two versions. But those aren't the versions in the record, the written record at the time. The written record at the time says he's fired because he's been breaking this rule ever since January. Nobody claims that's true. If I — we don't regard — a number of questions, I think, particularly Justice Alito, asked whether Congress would have intended the result in this case. We don't think it's as harsh as you do, but we think that the intent is particularly clear here. Section 4301-1 says the purpose of the — and this is a codified purpose, says the purpose of the statute is to minimize the disadvantages to civilian careers that can result from service in the military. And that, it seems to me, you have to read, use to read the rest of the statute. Secondly, this USERRA is unique among employment statutes, or close to it, because the employer has an economic incentive to break the law. It's expensive to keep reservists on the book. And Mullally and Cornshuk objected to Staub working there precisely because it cost them more money when he went to drill and it cost them more money when he was called up for Operation Iraqi Freedom. Alito, do you think that the standard for employer liability is different under this statute than under other Federal anti-discrimination statutes? Is that what you're — you were just suggesting? I think there are particularly compelling statute — textual reasons for the position we're urging here. Other statutes have different language. I'm not — I'm not addressing. You might decide this case. So that if we hold here that the — if we were to hold here that the cat's paw theory doesn't apply under this statute, the Seventh Circuit and other circuits could continue to apply the cat's paw theory under Title VII or under the ADA or under the ADA? Well, we think that would be wrong for some of the reasons we set out in our brief. But you could write an opinion that only addressed it under USERRA and left those other questions open. The — but the — Why would Title VII be different? Well, the language that — the language in Title VII is similar with regard to 4311 c. 1, but the language that I just read about the purpose isn't in Title VII. So it's some — you could decide this case on somewhat narrower grounds and not reach every situation. The — the interpretation of USERRA adopted by the Seventh Circuit creates a serious loophole in the statute. As a number of the amici have pointed out, and on the amici on the other side, employers typically make a disciplinary decision as a result of a bunch of different decisions. The Seventh Circuit holds that so long as the employer divides up those responsibilities, USERRA will not apply to many of the decisions. On their view, USERRA applies only to what the last decisionmaker did. And the narrower your role, the narrower the protections of the statute. This statute should not be read in that way, not only because of the language that I've recounted, but because USERRA, its re-employment rights, and its anti-discrimination rights play an essential role in the national defense. They safeguard the livelihood of men and women who safeguard the nation. And Congress would have wanted that statute read broadly. Thank you very much. Thank you, counsel. The case is submitted. The Honorable Court is now adjourned until tomorrow at 10 o'clock. Thank you.